All right we will call the last case on the calendar which is Coleman v. Brown. Oh and I guess I should say since both of you are we're not going to have you come up twice okay so why don't we'll hear first from counsel for well how are we doing yeah we'll hear first from counsel for the state right and that's you okay that's what I was trying to figure out who I'm looking at and I don't know how much time you'll need but we're hoping that maybe 25 minutes per buy-in case if you need a little bit more obviously you've seen we're not going to cut you off but we'll call you up once so say everything you have to say on both appeals and then we'll hear from counsel for the plaintiffs and then you'll have some time for rebuttal good morning your honors it may please the court Kevin both for defendants I'd like to reserve five minutes for rebuttal over the last two decades the state of California has put into place a comprehensive system for the delivery of mental health care for nearly 40,000 inmates including crisis bed and inpatient levels of care now that was the original objective of the judgment in this case and the orders on appeal now illustrate how this action is from that systemic goal to policing the procedures and policies regarding from the what's called the program guide which is a compendium of protocols and policies regarding nearly every aspect of mental health care treatment in prisons now these orders which mandate 100% compliance with the program guides transfer timelines is inconsistent with the Eighth Amendment and the prison litigation or Form X restrictions on prospective relief and should be reversed now this first appeal concerns the program guides 24-hour transfer timeline for mental health crisis beds and the district courts orders requiring the state to do two things first to attain for the first time 100% compliance with that transfer timeline and secondly to refrain from implementing to operational policies that would affect how the timeline is measured now because courts may not order prospective relief that is not necessary to correct the constitutional violation the central question that's presented in these appeals is whether anything less than permanent 100% compliance with the transfer timelines amounts to cruel and unusual punishment under the Eighth Amendment okay well I mean subject to exceptions that you all are still working out or have those been worked out now with respect to the inpatient timeline there have been some preliminary exceptions the court in its order stated that it believed that at the very least there were two situations that should be accepted which involving more urgent medical needs verse and when an inmate is out to court for some other reason and those exceptions essentially recognize that there's some circumstances where the timeline simply shouldn't apply where the state would be caught in a catch-22 either required to disregard the timelines or disregard another court's order or more urgent medical needs can I just be sure are you talking about the 24-hour now right now we're talking about the 24-hour and those there's been discussions and negotiations about the exceptions but they haven't become formalized and I'm the party seemed to be engaging in in discussions that about about how one would proceed in the future and that there isn't there was not it's not clear what troubled me about that was that those those discussions which could have led to somewhat of a different ruling so to speak were cut off by the notice of appeal because the judge said we got to stop since the notice of appeal deprived me of jurisdiction so do we do we actually know what the final outcome of these discussions would have been and what the final planning guide would have look like I don't think we know exactly what the final exception would look like in the program guide those except for the two specific ones that I mentioned before and then a third that is still trying to be worked out with respect to things that are quote-unquote beyond defendants control and what exactly that means subject to special masters input and negotiation of the park how do we rule on this without knowing what what the final what we're finally ruling is this a final order in that sense I believe it is a final order in that sense regardless of the specific delineation of the exceptions because all the exceptions really do is establish the parameters under which the 100% compliance the court was explicit about what it believed it said 100% subject to these limited exceptions that the court specifically caution should not swallow the rule and within those within those parameters the state is still being held to a 100% compliance standard that that's correct your honor in in effect what the all be all be the state is still within the parameters of the exceptions it's still being required to essentially operate the transfer timelines or to administer them in a flawless way so that there can only be any deviation in the district courts view would be a constitutional violation and the court was unambiguous about that well doesn't the court have some discretion in deciding whether or not you're going to comply with the whole thing or creating some exceptions I'm not sure I understand the argument that it wouldn't comply with the eighth amendment if it were any different the well yes your honor I mean the court does have discretion in crafting certain remedies but what the court cannot do is provide relief that would exceed the constitutional minimum and what the court said here is that the 24 compliance full and permanent compliance with the 24-hour timeline was necessary to satisfy the eighth amendment so essentially the court is saying if you fall below any deviation that falls below this 24-hour timeline is is a eighth amendment violation and that's that was an erroneous legal conclusion and it disregarded the correct analysis that's necessary under the eighth amendment but there must be both objective harm and a subjective intent component and by implementing the by imposing this this strict compliance standard the district court disregarded that analysis so the district courts as I understand that the district court seemed to be saying that because 25 years ago or how many ever years ago there was an eighth amendment violation and this plan was adopted to address that there is she could proceed or he could proceed as if there was one today in effect that is what the district court said and did based on what the injunctive relief but the problem I just have one more question because I want to be clear was there was this is this a consent decree did you ever did you ever or was it just an injunction that was ordered without opposition I mean what is the status of this planning guide or whatever it is not a consent decree your honor the the program guide was developed with the assistance of the special master the party's defendants plan for creating the system to deliver mental health care that we believe exceeds what the eighth amendment requires that plan was put together into the form that it is now a large operational manual essentially and it's been changing over time in 2006 there was an order that with the district court entered to immediately implement the provisions of the program guide however that since that time the program guide has itself changed and in the program guide there is no there is no requirement that the state must perfectly adhere to all the transfer timelines or any of the specific and granular details as part of that order the the program guide itself acknowledges that there will be delays in transfers to higher levels of care and it specifically provides terms that address how and the manner in which interim cares to be provided how waitlists are going to be managed and so the program guide itself contemplates that there's going to be these delays which means that what the district court that has done here by imposing this 100% compliance standard is really is doing something new hadn't been done before well I guess are you arguing that the that the court should have said you only have to comply with 90% you know just because that that seems rather arbitrary would seem sensible to say you comply with it and then and then if there are instances in which there is not compliance there could be a question as whether or not there should be some kind of sanction well we're not asking that the court announced a specific numerical benchmark what the court should have done below is it should have conducted the correct analysis under the Eighth Amendment if the court's going to grant an injunction grant prospective relief then under the PLRA it must determine that there is a current and in this particular case though however you're not your honor it didn't do the correct analysis in reaching that conclusion what the court said was it it used the program guides terms it essentially conflated deviations from the program guide with an Eighth Amendment violations maybe you can respond to the argument that that ship has sailed and I because that's my view is that this is now the district court maybe had discretion under law of the doctrine to revisit that but this is way we're way past that stage you all had an opportunity in 2013 probably in 2014 as well to take that up matter of fact you did appeal the 2013 denial and you then you abandon it or something happened and we never got so I just think that's that ship has sailed and I don't know why for one second we would think about diving back into that you all came up with the program guy lays out the what you're in the view of the was necessary to meet the amendment to secure the Eighth Amendment violation and the district court in those prior orders said that the program guide basically sets the Eighth Amendment floor and that's all that's all the district court did here was to hold you to that now what the district court did in the in the previous orders and I think that the problem is that the court can't rely on old findings and old determinations this court in Gilmore said that in order to show a current and ongoing constitutional violation it can't be based on the prior record it must be based on the current record and in doing so in relying on those old findings as well what the the court did was it it didn't the court didn't previously say that the program guide is the Eighth Amendment floor the constitutional floor the court said that the program guide is grounded in defendants understanding of the Eighth Amendment and that's not the same thing as saying that a deviation from the program guides timelines or its terms is a constitutional violation that justifies prospective relief but I thought that let's just talk about the crisis beds right that it was agreed that there there had been an Eighth Amendment violation in the sense that it was taking too long between the time of referral and to the time of placement or whatever it is I don't have all the terminology down but you know what I'm talking about and I thought it was concluded with the state's acquiescence that 24 hours was the period that essentially was necessary to cure the Eighth Amendment violation that had been occurring right and so that was you you all were ordered to make sure that but there were some substantial number of inmates who it was taking longer than that so you all weren't in compliance with what the program guide spelled out and I don't what was the district was supposed to do other than say look you need to comply with this I'm serious this wasn't you know we're just playing games here I recognize there are going to be situations that are outside of the state's control and we'll work on developing exceptions for those but in all other cases you do have to do it within 24 hours I don't understand what's what's wrong with that I think that and no one is disputing that 24 hours is a reasonable amount of time to transfer these inmates who have been referred but the problem is that what the court has done is to announce a constitutional compliance standard and if it if falling below 100% compliance is sufficient to justify prospective relief then that's also the standard that the terminate relief and in a case like this where you have a complex injunction and where the state is contending with it's a massive system that deals with many moving parts and on a monthly basis there are almost 1,500 crisis bed referrals and 15,000 crisis bed referrals per year that a deviation simply falling below a 100% threshold could constitute a constitutional violation that's a constitutional standard that's it's it's unreasonable and it's not supported by the proper Eighth Amendment analysis maybe you can go back and maybe it was Judge Schroeder's question so if not what the district court did what's the alternative exactly just well try your best and hopefully you'll meet it in most cases and you know like however many people commit suicide in the interim well it's just a cost of doing business here I mean what what is the district court supposed to do if not say no I'm serious you must do this that is what you all agreed to in was the terms were in most cases now come up with the the description of the very small subset of cases where you'll be excused because everyone recognizes we're not trying to be unreasonable what's the alternative to that that you think the district court should impose there were less intrusive means for the court to effectuate the the timeline compliance and defendants presented various proposals and processes that they were implementing and in turn including increasing capacity and taking additional measures that were going to accelerate time frames and the court can oversee that and require those things be done but what it cannot do is announce that 100% compliance is going to be the constitutional standard that anything any deviation that falls below is going to it's not any in an absolute sense right because there are the exceptions that will be worked out I guess I'm just stumbling over that I hear you if you were to say like no matter what even if there's an earthquake and you know it's impossible an act of God intervenes and you're going to be held in contempt okay I understand that but that's not what we're talking about right so why isn't it if you're just going to carve out the small subset of cases in which due to circumstances essentially beyond your control there more time it was needed why isn't it okay to insist that no you are going to comply in all the rest of the cases but isn't that what always happens when somebody is ordered to do something of this sort of programmatic nature I think that because it still is overbroad in terms of what that 100% requires ultimately the state can only implement a system through it's through people and through its actors and their professionals but there's still one the standard is too high then that going back to what judge Watford was asking that seems to be something that should have been appealed when the when the original order was entered doesn't it and I disagree your honor I think that the the fact that the district court entered in order that say it said immediately implement the program guys provisions was not sufficiently that's not specific enough to say that well in reality what you need to do is ensure a flawless performance of the system in the original plan say in most cases 24 hours that's correct your honor the it says in most cases the the transfers will be affected in 24 hours okay I thought you had some discreet problems with this and you wanted to count the you didn't want the 24 hours to include transportation that's correct and you didn't want and you wanted to be able to an evaluation made by a professional about the need because many people who were sent actually was sent back as not needing that that that care that those were the those were the issues that you really had problems with am I right yes your honor that is correct so those are the two things that bother you those two policies the way that they came about the court asked for the parties to talk about obstacles to compliance and one of the main obstacles to affecting timely transfers is the problem of rescissions which is what you were mentioning and but that goes to the issue of whether an about who should whether a professional evaluation should be made that's correct I think that brings me to a question just as a point of information how is it determined initially that these people who were talking about need this this bed how who decides initially who has to be moved within 24 hours a clinician makes that decision initially a clinician what kind of clinician a doctor a psychiatrist or a psychologist so what more do you want in terms of the third the third objection that you had well the the problem is that in instances where there's no on-site clinician and then the initial assessment cannot be done face-to-face and in many instances what happens is a nurse simply relays information over the phone to the on-call clinician who then makes a determination of the referral and during these which it usually happens in these after-hours settings it contributes to this high level of rescissions what the what dr. presented in our chief psychologist testified to was that face-to-face evaluations are a better way to assess to more accurately assess how many forget how much the district court mentioned it but how much longer does it because these things happen at night or it could happen on a Friday night and somebody might be seen on Monday generally speaking how long an additional period of time that those face-to-face evaluations take place and what percentage of the cases typically would be several hours if it happened at night and then clinicians whenever an inmate is placed into what's called alternative housing for when they're waiting for transfer to a crisis bed they're required to be seen every day by they would wait until the following morning to have an assessment that's done there's a horrendous description of some of what you call alternate housing and the district I think in one of the district courts opinion is that description of current alternative housing or is that what existed before no you're on that first those things were from before that was in the suicide experts report but in each of those instances what those were outlier situations outlier where the policies were not being followed for alternative housing and in addition in a system where we're looking at 1,500 crisis bed referrals every month these isolated incidents don't establish that there was a systemic problem here with with the alternative housing program so let me be your argument today is that forget about the findings from 25 years ago or 15 years ago whatever but if we were just looking at as a new case what goes on today would not be an 8th Amendment violation is that your argument yes we would contend that that's true that as a we're not the way that the system currently operates is not systemically denying inmates ready access to care simply because they the timelines are not met in every single instance and in addition there's the district court did not look at any subjective intent component of the 8th Amendment analysis which is also required in the Supreme Court's precedent is clear that cruel and unusual punishment a subjective intent is inherent in the 8th Amendment's cruel and unusual punishment clause so essentially your argument is that the district court is a stopping saying you're a stop because of what happened decades ago and you agreed to a come back and say there's no more 8th Amendment violation and therefore you're bound in effect by this 24-hour period in a way your honor the what the court is what the court has said is that because of what has happened in the past then it's no longer necessary to do a further analysis but it's a long time in the past right yes it's been under constant court supervision since the case was instituted has it not but then did this record at one point in 2013 I believe praise the progress that had been made yes your honor and it was specifically in the inpatient context the the court said that remarkable accomplishments and that defendants were in compliance it said that it wasn't enough to justify termination of all relief but it said that the defendants that come into compliance with respect to that did you want to address at all the other appeal yes briefly your honor it's briefly it the other appeal which deals with inpatient timelines and involves some of the same types of issues about 100% compliance and whether that's required under the 8th Amendment I would just as initial matter note that there I believe there's jurisdiction in this in this appeal as well what the district court did is it is to enter an injunction what's different about your obligations after this is the April order right yes that's correct what's different afterwards as opposed to before because my impression was that the district was just reiterating what you had already been ordered to do with no changes because by requiring this full and permanent 100% compliance standard it substantively changed defendants for media obligations so before the chart that I'm picturing in my mind it didn't even have in for the 10 and 30 day it didn't even have the in most cases qualifier that you have for the 24-hour time limit it was just you will comply with this set schedule of deadlines right there was so you were just and the district court had been incredibly patient with you all waiting for you to come in into compliance there was all kinds of improvement and backsliding and at the end of the day there was a big gap between what you all had agreed to do and what was being done and all the district court said is times up you are going to comply and apparently what I've done before hasn't been good enough so they're going to be sanctions and I guess I don't see how is that a new injunction the program guide in fact does acknowledge that there would be delays in the inpatient context as well and it provides for wait lists and specifically discusses prioritization and that's at 12-6-5 in the program guide and 12-1-15 noting that some inmates may be placed on a wait list pending bed availability so the program guide itself does acknowledge that there could be delays as well in the inpatient context the other thing that is important to note is that the prior orders and the district court referred to these all were relating to orders to reduce or eliminate the wait lists and defendants produced plans to reduce and eliminate those wait lists and they did that is that the district court acknowledged in the 2013 termination order but what has happened here is that and what those orders show is that something less than 100% compliance was acceptable to meet the constitutional standard reducing the wait list to an acceptable level not eliminating the wait list completely which is what the 100% compliance standard that the district court imposed now that's the effect of what the district court has done is to change what those previous orders had meant so we have that is another reason that we have something new here the relief is different than it was before and the exceptions in addition I would say also demonstrate that this is new relief the fact that exceptions have to be articulated and negotiated and then incorporated into the program guide is another reason that we can see that this is in fact new relief and so why don't I ask you to pause let's hear from the 45 there was a table that lists male acute psychiatric program and and the various other programs and for example on male acute psychiatric program it and the beds needed with 365 and throughout all of this and the high custody it says beds needed 702 estimated 631 as I go through this it doesn't seem to me that this and this is a California prison system with 38,000 people it doesn't seem to me how significant are these deviations now I guess I should leave me ask the question of your colleague so maybe I would just say that it the it's a small population but it's a large and complex system it requires a lot of resources to administer and so as I mentioned we are looking at in the inpatient context there's some 2,200 approximately every year inmates who are admitted to inpatient care and the the 40,000 inmates 38,000 40,000 inmates that's simply them the inmates who are in the mental health delivery system itself so it while it's a small percentage of okay thank you so we'll give you some time for rebuttal let's hear from counsel for the plaintiffs morning your honor I'm Lisa else I represent the plaintiff class this is not a case you move the mic a little down a little bit more sorry use your outside voice is this better yeah this is not a case your honor where the non-compliance were made 25 years ago and then never revisited this court on defendants motion to terminate specifically found in 2013 that the constitutional violation not our court you mean the district yet the district court and it found that the constitutional violation of the failure to provide timely access to adequate care was ongoing the Supreme Court in 2011 in this case found that same constitutional violation remained ongoing and current and there was more than sufficient evidence before the district court that those violations were still causing harm and that they had not been abated defendants have never moved under rule 60 or the PLRA to terminate or modify any aspect of timelines or the orders at issue in these appeals they also have never remediated or offered any other alternatives about how they might remediate these violations even though the district court has said repeatedly this case is based on a psychological case the court has said the way it's done is not in the family of an individual by a scientist by an individual by an individual by an individual this case cannot be ruled what the district defendants have done there are things that should be remediated but what I'm just focusing on if I understood what that's all about and what's wrong with that why is 24 hours why is supposing 27 hours can be counted as a bus ride why isn't it reasonable to want to have a procedure which doesn't involve people being taken to these these street facilities and then sent back because it turns out that they really didn't mean to be injured I mean I don't understand this case but at least it sounds like okay that's reasonable there are a number of responses to that 24 hours is magic only because defendants themselves proposed it and the constitutional litigation plan in this case they can't change their mind it's not just 24 hours it's what the family of the individual which is someone who has a chance for it and also the method that you used to decide whether someone should be in this beginning so even if they proposed this one day 20 years ago in 1995 all these things are changed my mind you have a question which is why it seems to me that Mr. Forbes is sort of a spy because he can't come and say yes, he virtually agreed that the 9th Amendment is some sort of document there was a litigated trial there was a litigated trial I don't know I guess I didn't quite understand this document came about and he said he virtually agreed whatever it is but they stopped in a and they now say well, it's very confusing 24 hours we don't have a problem 24 hours but we want some it's unreasonable for 100% and not counting the transportation and not counting the twice which prevents people from being 70% back in the meantime taking their place in the workplace and they can't make their argument that they endorse this plan they absolutely can't make that argument they have that opportunity every single day under both committees and under the PLRA they have to meet their burden of showing that their plan would be equally effective at remediating the constitutional violations the district court would do all that they could possibly need in support of their positions and make specific factual findings that would be clear about why it would not only push remediation of the constitutional violations even further down the line but would actually exacerbate harm to the point of class and I'm happy to talk to you about exactly why that is but I also want to clear up a misperception about what the rescissions actually result in these are not people that are in crisis beds that we are discussing these are people in alternative housing they're not holding up beds that are going to be used for other people this is all before anybody gets to a crisis bed so we're talking about administrative staff and the workload for them we're not talking about taking up precious crisis beds so that was not an issue there and more importantly not only did the district court evaluate all of the evidence of why expanding the amount of time in alternative housing was bad she took new testimony about what it was and some of the testimony that was before her was a California state auditor report from 2017 the same year saying that the defendants had failed to properly implement their suicide prevention policies their suicide rate remained sky high far above the national average and they also had the suicide prevention expert report literally filed a week before the hearing on this finding that people were still being housed in quote horrendous outrageous settings while they were awaiting crisis care they received no treatment in those places there were people strapped to gurneys for three days who were suicidal who urinated all over themselves because they were waiting for crisis care there were people that were not observed as they were required to be by defendants policies who killed themselves and I'll just note that both of those are remarkably similar to circumstances that the supreme court described in 2011 when they described people being held standing room only while suicidal in cages overnight urinating on themselves not receiving treatment and when they also described somebody who committed suicide in the record before the supreme court who killed themselves while they were supposed to be observed in alternative housing and were not so nothing has changed your honor and moreover it is what the supreme court was describing was that systematic or is that something that happens because somebody didn't do their job in particular cases the supreme court noted that as evidence of the ongoing failure to comply with eighth amendment command to provide timely access to adequate care they found that that specific violation inciting that evidence remained ongoing so it's exactly the same constitutional standard that the district court applied looked at the evidence before it and determined nothing had changed and moreover defendants like to say that those are outlier examples in 2017 the suicide prevention expert found that 40% of the institutions he reviewed were not compliant with their suicide prevention policies that's not an outlier 40% of the institutions were not so that's the evidence before the district court and more over there is other evidence and the district court was allowed to look at this its earlier findings both the supreme court in the Plotivy-Brown case and the ninth circuit in the Armstrong 2014 case said that it is entirely permissible and appropriate for the district court to look at earlier holdings and findings that are in the record when the district court was allowed to look at  and they found that there was plenty of evidence in the record that mental health crisis beds that delays in crisis care make people sicker it increases the suicide rate it causes people to be held in settings that cause them to decompensate and sometimes falsely recant real suicidal ideation which again contributes to the very high suicide rate in the district court they have never been in compliance with the 24 hour transfer timeline never and the district court did not abuse its authority in finding not only could it force them to finally come into compliance if they are willing not only that but not to expand the harm to the plaintiff class by allowing them to further delay the treatment that people receive people don't receive any mental health treatment while they're in the alternative housing there is evidence in the record of that Dr. Brizendine did testify to that they don't receive any care while they're sitting on a van and that is uncontested so the burden was on the state to establish that something has changed that would make it appropriate for them to expand the amount of time people spend in these settings not receiving any care it's not possible to receive care on a van as it's traveling I don't know what the distances and the times in California they can be great it can there are only a certain number of crisis bed units at certain prisons in the system and there are cases where they have traveled eight hours on a van to a crisis bed so it can be a long time and moreover the state even if it's a one hour drive the state has agreed that it is clinically appropriate for people to receive care in a licensed unit for suicidality within 24 hours they can make their staff account for that one hour in those 24 hours they just told you up here that 24 hours is the clinically appropriate standard they have never again there are internal processes in the program guide itself they can administratively change things in the program guide they can move before the court rule 60 always available to them it's an equity court the court is flexible they have to meet their burden of showing that their alternative is equally effective at remediating existing constitutional violations and they just didn't do that that's reviewed all the factual findings are reviewed for clear error and it's an abuse of discretion standard and there's just no question the district court had more than enough evidence before it to issue these rulings can I ask you about the rescission I thought the district court made a factual finding that actually there wasn't any evidence that there was a correlation between the not being able to do the face-to-face can you remind me? That's correct so there actually is nothing in the record saying that there is anything showing that it is more effective that you basically get a better read of the person to get a more accurate sense of whether they're suicidal if you review them in person there was a fundamental mismatch between the data that was provided to the court in support of that notion and the actual reality on the ground defendants provided evidence looking comparing the rate from 5 p.m. to 5 a.m. and then you know the alternative 5 a.m. to 5 p.m. and said it's much higher at night the problem with that however is that there is not a single prison in the state of California that operates from 5 p.m. to 5 a.m. with no clinical staff or that opens at 5 a.m. for business and has clinical staff so there's nothing in the data that actually maps to the allegation or I should say to the modification and the rationale for it that the state provided so there's no affirmative evidence that shows that there is anything that is better about an in-person clinical assessment that would actually reduce the rescission rate and again that's not people that are in crisis beds those are people that are waiting in alternative housing so we're purely talking about administrative staff functions so unless you have further questions on the mental crisis bed appeal I'd like to one further point just am I remembering right that the district court in response to their arguments about the 8th amendment and there needing to be fresh findings and all that just basically said no that has already been settled and I'm not going to revisit that given what was decided in 2013 and 2014 I don't necessarily think that that's exactly accurate because the district court did cite its earlier findings again this is a chance for defendants to show that something's changed so the standards remain themselves this is essentially an enforcement motion she wasn't required to make new findings of an ongoing constitutional violation because I'm speaking as to the 100% compliance portion here because she was merely enforcing an existing valid order that defendants have never moved to modify or terminate so and moreover the record. But it wasn't always 100% it was I'm not aware of most orders that I've received in court I said they quoted from it yes I'm saying that I'm not aware of most district court orders saying or even implying that you can choose how often that you want to comply typically when you're ordered to do something in my experience and you're a district court judge you know a lot more than I do but typically you're required to comply and that's it and moreover they've had plenty of time to come into compliance and at the time of the district court's order they were 25% of the time they were late so we're not talking about 25% they were on time I guess my next question is is it your view that they haven't made any improvements from the time that this document was this program guide was put into place in the system overall yeah I think that there has been some very good work I think that to get out of this case which is what the district court's mission is she is looking very affirmatively to find ways to encourage defendants to be compliant and remain compliant with the benchmarks that they developed for establishing the constitutional remedy in this case so she's very focused and has been very dedicated in essentially saying here are the standards you've developed them and I've you've never done it so start doing it and that's the mandate of the court and I think that's what the supreme court requires her to do she's required to affirmatively remediate the constitutional violations in this case according to Padaby Brown which is this case that's her command I'm sorry go ahead what discussions I think you may allude to them in your brief were going on when the notice of appeal was filed and the district judge said stop everything because I can't do anything since my jurisdiction has been ousted so prior to the notice of appeal actually over the summer because her initial order in April is the order that required us to meet and confer about these exceptions and we filed a stipulation in I believe July of 2017 so before the notice of appeal saying that we had generally agreed to three categories we filed this with the court the categories were people that are out to court people that are out for medical conditions that are more sort of significant or more important at the time than the mental health crisis and a general other category that literally covers any circumstance that's outside the state's control and it also said that we were we hadn't refined the exact language in the program guide but we had stipulated to those categories we were continuing to discuss other categories as well and that got called off. That's one of the things that troubled me because we don't had it not had it not had this discussions these discussions not been stopped and the last category you mentioned was a general one it might have been adopted we might have been reviewing an order that's different from what was from what we're reviewing because progress was being made and in fact the last the last clause was a sort of an open ended safety valve I'm just using the language you understand. Right. So are we are we actually reviewing what would likely have been the final outcome if your discussions had not been interrupted by the filing of a notice of appeal? I think there is some legitimate question as to whether or not the portion of the October 10th order that pertains to 100% compliance is appropriately before this court under pendant jurisdiction principles. I don't think there's any question that the portion that refused to allow defendants to modify the remedial plan with regard to transport time and the in-person versus on-call. I know but that's there but then what you described that you were negotiating they could conceivably come to you and under this safety valve clause which I'm using for short and say you know maybe we could do a little something. Yeah I mean we've already like I said stipulated to the court that we've agreed to these three exceptions they are by the way this thing... but that's not what we're being asked to review because it was never you know the process was interrupted by this filing of a notice of appeal. The process was interrupted but I also think that you know those are the same... This I get from your brief not from them. Yes. This is in your brief. Yes. Those three exceptions that I described that we stipulated to that the court didn't formally order because we were still working on them those are the same three exceptions that we agreed to in the inpatient context which were court ordered so I don't think there's any question the court would have approved those three. No I agree. There may have been others but the point is that there is no perfect compliance standard here. There are a whole host of exceptions that defendants can utilize and that they do utilize to excuse tardiness. The exceptions don't cover circumstances that are wholly in their control when they've had 20 years to figure out how to comply with these standards that are again their own standards. Is this the first time that this case has been to this court since Brown v. Plata? Yes. Like I said it was fully briefed in 2013 on the termination motion and there were actually two other related appeals in 2013 and the state voluntarily dismissed all three after briefing. What do you want to say about the other appeal? So I think the point with respect to the inpatient appeal one of the critical points is that I think Judge Corman was asking about basically sort of the magnitude of the problem and I think what the district court was seeing in the fall of 2015 and 2016 was that the gains that the court had praised in 2013 were evaporating. I thought my impression was and you could correct me that was because there was a sudden increase in the numbers of people who needed it. So the bed planning projections that defendants receive showed that they and the district court found after significant evidence and testimony in the March 24th order which proceeded and was integrated into the April 19th order found that defendants had many, many options and that it was feasible for them to comply. And defendants don't contest that. It is, they agree that it is feasible for them to comply with the inpatient transfer timelines. So they don't challenge that factual finding nor could they because that was their testimony. So they have plenty of options available to them to timely transfer people to inpatient care. And I've lost the thread on your question. Did you Well, you started it. I did. Okay. You said to get back to what Judge Corwin said. Oh, right. Excuse me, Your Honor. Thank you, yes. So what, the point I was planning to make is that the history of this case and this is another great reason to defer to the district court. The history of this case is that the inpatient transfer timelines sometimes get better, sometimes get worse, but they, it's a persistent chronic cycle. And so when the district court found that they were again creeping up into the dozens and then into the 60s, and I believe it got around 100 of people waiting past transfer timelines, the district court put a stop to it and said, look, we need to finally fix this problem. You can do it. It's feasible. You don't challenge that finding. So just do it. And I defer to you 100% about all the mechanisms you want to do that. Just do it and get it done and then we can put this portion of the case behind us. So the court is really trying to drive toward resolution of this case and the contempt findings, you know, the preliminary contempt findings, obviously there was never a hearing where they were actually found in contempt or sanctioned, another reason this is not an appealable order. But her methods are working. They've been in compliance with the transfer timelines for a year at this point and that is unprecedented in this case. So the district court knows what she is doing and there's plenty of case law in Armstrong in this case, I'm sorry, in this court that says the district court managing complex litigation should be given even more deference than normal when you're reviewing an abusive discretion standard, which is what is governing these appeals. Can I ask one more question that deals with, it doesn't deal specifically with this, but who's the policymaker here? I know New York is just so everybody is responsible and no one's responsible. Who is deciding this? How does this work? Is the attorney general deciding whether to take this position? Is the governor deciding whether to take this position? Is somebody else? I'm just trying to understand. I think that's an excellent question for opposing counsel. Okay. I'm not really in a position to know that, but I do want to point out just one more bit of essentially harm with respect to the inpatient transfer timelines. That is as the district court very extensively laid out, not only is it a perpetual cycle in this case, but that perpetual cycle trickles down to every level of care. When there are delays at the top, there are delays in MHCBs, there are delays in every other level of care down the stream. All of that exacerbates and makes people actually sicker. It also causes clinicians to stop referring people because they know it's going to be a long time. I may as well just keep them here and try and treat them as best I can locally. All of those are evidence of harm. I think there's no question that the district court found that the policies and procedures that the state is putting into place were not sufficient to obviate that substantial risk of serious harm under the Eighth Amendment. To the extent that the subjective intent analysis is before this court, there's more than enough of a record to show that in taking the long way to build new crisis beds when they could have taken the short way, when they had plenty of bed plans that were telling them for years in advance that they were going to be short on crisis beds, for failing to transfer people to inpatient care on time when it was feasible, all of that is more than sufficient to establish deliberate indifference on the Eighth Amendment violation here. Thank you, counsel. Let's put three minutes on the clock for the state. Given the lateness of the hour, I'm going to hold you to the three minutes, so please try to be succinct in your reply. Your adversary says it was a great question to ask you. Who decides this? I mean, who's the policymaker here? Is it the Attorney General? Is it the governor? Who is, I guess, instructing you to take the positions that you're taking? I'm just trying to understand. I mean, California, after all, is not Alabama. You mean the legal positions? Yes, the positions that you're taking now. Who is the policymaker? I believe that it would be from the defendants in this case, the governor, the secretary of the department. You believe or you know? Yes. Those are the officials that are being sued in their official capacity, and the policies that are made, those are things that are the mental health policies, but if you're asking about the legal positions, the specific legal positions, then it's a, this is a collaboration with executive staff. This is executive branch decision-making. Including the governor? The governor and the secretary of the department. I'm sorry. I hope Judge Watson gets here. He has a minute. Be quick. Your Honor, I would just address the exceptions very quickly, and Judge Corman, your concern about the interruption regarding the, with the exceptions and how it interrupted, and I would just say that the exceptions and the fact that the last category is somewhat still a little bit amorphous is not enough to make the order at issue non-final. What the district court did is it announced its constitutional ruling, and in the post-judgment context, we give a, this court gives a practical construction of finality to orders, because it's not clear whether what, whether there will be some further order down the road that will be appealable. Well, an order could be to hold you in contempt, and you could appeal from the contempt order. That's one argument that's not frivolous. It may not apply here, but it seemed to me that things were going along, and you suddenly file a notice of appeal. Was it, was your time running out? Because if the, because the order constitutes injunctive relief, we would not have the ability under Ninth Circuit case law to challenge the terms of that relief following a contempt order, because the order that's been, that's being disobeyed, we would be barred from challenging that. You were talking about exceptions, one of which was a fairly, and at least in its language, was the third was fairly broad. I called it safety valve. And why did you cut it short by filing a notice of appeal? Again, I believe because the order was still granting injunctive relief, and there was, it's unclear as to whether there would be some subsequent appealable order afterwards that we would be able to appeal. So we wouldn't have the ability to effectively appeal. Thank you, counsel. The case just argued will be submitted, and to be clear, we're submitting both 17-17328 and 17-16080. Court is in recess until tomorrow. Thank you. I'm going to leave you with a little bit of background on how we can use the       on the  Yes Yes Mi Mi Mi Mi Mi Mi My
judges: Schroeder, Watford, Korman